**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                            :
UNITED STATES ENDOSCOPY GROUP, INC., :      CASE NO.:  1:06-CV-1253
                                            :
                      Plaintiff,            :      JUDGE BOYKO
                                            :      MAGISTRATE JUDGE
           v.                               :      VECCHIARELLI
                                            :
CONMED ENDOSCOPIC TECHNOLOGIES,    :      **CONMED'S ANSWER TO**
INC., et al.                                :      **SECOND AMENDED**
                                            :      **COMPLAINT FOR PATENT**
                      Defendants.           :      **INFRINGEMENT, BREACH OF**
                                            :      **CONTRACT, CONVERSION,**
                                            :      **ACCOUNTING AND**
                                            :      **DECLARATORY JUDGMENT**
                                            :      **AND COUNTERCLAIMS**
                                            :
                                            :
                                            :      **DEMAND FOR JURY TRIAL**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendants ConMed Endoscopic Technologies, Inc. and ConMed Corporation

(collectively "ConMed"), by and through their undersigned counsel, answer the Second

Amended Complaint for Patent Infringement, Breach of Contract, Conversion, Accounting and

Declaratory Judgment ("Complaint") of United States Endoscopy Group, Inc. ("USEG") as

follows:

1.      ConMed admits that USEG has filed an action as stated, denies that there has been any infringement, denies that USEG is entitled to any relief, and is without information sufficient to form a belief as to the remaining allegations of paragraph 1 of the Complaint and therefore denies them.

## THE PARTIES

2.      ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 of the Complaint and therefore denies them.

3.      ConMed denies that ConMed Endoscopic does business "regularly" in Ohio, and otherwise admits the allegations of paragraph 3 of the Complaint.

4.      ConMed denies that ConMed Corporation does business "regularly" in Ohio, and otherwise admits the allegations of paragraph 4 of the Complaint.

5.      ConMed admits, upon information and belief, that Granit Medical Innovations, LLC ("GMI") is a limited liability company existing under the laws of the State of New York, with a principal place of business at 992 Fifth Avenue, New York, NY 10028.  ConMed admits that GMI has licensed to ConMed certain rights pertaining to the Nakao Spider-Net™ Retrieval Device and that GMI provided certain designs and know-how pertaining to net retrieval devices. ConMed is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5 of the Complaint and therefore denies them.

## JURISDICTION AND VENUE

6.      ConMed admits only that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) over those causes of action alleged in USEG's Complaint that arise under the patent laws of the United States, as set forth in 35 U.S.C. § 1, et seq.  ConMed denies all the remaining allegations of paragraph 6 of the Complaint.

2

7.     ConMed admits that this Court has personal jurisdiction over ConMed in relation to the allegations of patent infringement set forth in Count I, admits that ConMed is offering for sale, selling and shipping certain endoscopic instruments into the Northern District of Ohio, and denies all the remaining allegations in paragraph 7 of the Complaint.

8.     ConMed admits that GMI has licensed to ConMed certain rights pertaining to the Nakao Spider-Net Retrieval Device.  ConMed is without information and belief as to the alleged activities of GMI and denies all the remaining allegations of paragraph 8 of the Complaint.

9.     ConMed admits that it has one employee who resides in this judicial district and offers for sale the Nakao Spider-Net Retrieval Device in this judicial district, and denies the remaining allegations in the first sentence of paragraph 9 of the Complaint.  ConMed denies all allegations in the second sentence of paragraph 9.

10.     ConMed admits that venue is proper in this judicial district in relation to Count I under 28 U.S.C. § 1391(b) and 1400(b) as to ConMed, is without information or belief as to Counts II-VIII, and denies that venue is appropriate under 28 U.S.C. § 1404.

## COUNT I – PATENT INFRINGEMENT

11.     ConMed admits that the face of United States Patent No. 5,643,283 ("the '283 Patent") bears the title "Surgical Pouch," admits that the face of the patent indicates that it issued July 1, 1997 naming Marlin E. Younker as the inventor, and admits that Exhibit A of the Complaint purports to be a copy of the '283 Patent.  ConMed specifically denies that the '283 Patent was duly and legally issued, and denies each and every remaining allegation of paragraph 11.

12.     ConMed admits that Exhibit B of the Complaint purports to be a copy of an assignment of the '283 Patent from Mr. Younker to USEG and that the assignment appears to

have been executed on May 17, 2006.  ConMed is without information and belief as to the remaining allegations of paragraph 12, and therefore denies them.

13.    ConMed admits that the face of United States Patent No. 5,906,621 ("the '621 Patent") bears the title "Endoscopic Surgical Device," admits that the face of the patent indicates that it issued May 25, 1999 naming Dean J. Secrest and Marlin E. Younker as the inventors, and admits that Exhibit C of the Complaint purports to be a copy of the '621 Patent.  ConMed specifically denies that the '621 Patent was duly and legally issued, and denies each and every remaining allegation of paragraph 13.

14.    ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 and therefore denies them.

15.    ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Complaint and therefore denies them.

16.    ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 of the Complaint and therefore denies them.

17.    ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 of the Complaint and therefore denies them.

18.    ConMed admits that as of October 5, 2006, GMI's web site, www.granitmedical.com, states that the Nakao Snare Line is "to be distributed by ConMed Endoscopic Technologies beginning May 2006."

19.    ConMed admits the allegations of the first sentence of paragraph 19 of the Complaint with respect to ConMed and denies the allegations with respect to GMI.  ConMed admits that GMI has licensed to ConMed certain rights pertaining to the Nakao Spider-Net Retrieval Device and denies the remaining allegations of the second sentence of paragraph 19.

4

ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of the third sentence of paragraph 19 of the Complaint and therefore denies them. ConMed is informed and believes that the allegations of the fourth sentence of paragraph 19 are true.  ConMed denies the allegations of the fifth sentence of paragraph 19 of the Complaint.

20.     ConMed admits that it has not applied for nor received marketing approval from the FDA for the Nakao Spider-Net Retrieval Device and denies all remaining allegations in paragraph 20 of the Complaint.

21.     ConMed admits the allegation of paragraph 21 of the Complaint.

22.     ConMed denies the allegations of paragraph 22 of the Complaint.

23.     ConMed denies the allegations of paragraph 23 of the Complaint.

24.     ConMed denies the allegations of paragraph 24 of the Complaint.

25.     ConMed denies the allegations of paragraph 25 of the Complaint.

26.     ConMed denies the allegations of paragraph 26 of the Complaint.

27.     ConMed denies the allegations of paragraph 27 of the Complaint.

28.     ConMed denies the allegations of paragraph 28 of the Complaint.

## COUNT II – BREACH OF CONTRACT

29.     ConMed incorporates paragraphs 1-28 of this Answer as if fully set forth herein.

30.     Upon information and belief, ConMed admits the allegation of the first sentence of paragraph 30 of the Complaint.  ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 30 of the Complaint and therefore denies them.

31.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 of the Complaint and therefore denies them.

32.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the Complaint and therefore denies them.

33.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of the Complaint and therefore denies them.

34.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 of the Complaint and therefore denies them.

35.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 of the Complaint and therefore denies them.

36.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 of the Complaint and therefore denies them.

37.     Upon information and belief, ConMed denies the allegations of paragraph 37 of the Complaint.

38.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 of the Complaint and therefore denies them.

39.     ConMed admits that paragraph 11 of the 1993 Agreement provides substantially as stated in the last sentence of paragraph 39 of the Complaint.  As to all of the remaining allegations of paragraph 39, ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

40.     Upon information and belief, ConMed denies the allegations of paragraph 40 of the Complaint.

41.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint and therefore denies them.

42.     ConMed admits the allegations in the first sentence of paragraph 42 of the Complaint.  Upon information and belief, ConMed denies all of the remaining allegations of paragraph 42 of the Complaint.

43.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 of the Complaint and therefore denies them.

44.     ConMed admits the allegations of the first sentence of paragraph 44 of the Complaint and admits that it began to manufacture, sell and distribute the Nakao Spider-Net Retrieval Device pursuant to the July 2005 license agreement.  ConMed denies all remaining allegations of paragraph 44 of the Complaint.

45.     ConMed is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 of the Complaint and therefore denies them.

46.     ConMed is without information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 46 of the Complaint and therefore denies them.

47.     ConMed is without information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 47 of the Complaint and therefore denies them.

48.     ConMed is without information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 48 of the Complaint and therefore denies them.

## COUNT III – BREACH OF CONFIDENTIALITY

49.     ConMed incorporates paragraphs 1-48 of this Answer as if fully set forth herein.

50.     ConMed admits that paragraph 10 of the 1993 Agreement provides substantially as stated in paragraph 50 of the Complaint.

51.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 51 of the Complaint and therefore denies them.

52.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 52 of the Complaint and therefore denies them.

53.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 53 of the Complaint and therefore denies them.

54.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 54 of the Complaint and therefore denies them.

55.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 55 of the Complaint and therefore denies them.

56.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 56 of the Complaint and therefore denies them.

57.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 57 of the Complaint and therefore denies them.

## COUNT IV – COMMON LAW CONVERSION

58.     ConMed incorporates paragraphs 1-57 of this Answer as if fully set forth herein.

59.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 59 of the Complaint and therefore denies them.

60.     Upon information and belief, ConMed denies the allegations of paragraph 60 of the Complaint.

61.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 61 of the Complaint and therefore denies them.

62.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 62 of the Complaint and therefore denies them.

63.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 63 of the Complaint and therefore denies them.

## COUNT V – ACCOUNTING

64.     ConMed incorporates paragraphs 1-63 of this Answer as if fully set forth herein.

65.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 65 of the Complaint and therefore denies them.

66.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 66 of the Complaint and therefore denies them.

67.     ConMed is without information sufficient to form a belief as to the truth of the allegations of paragraph 67 of the Complaint and therefore denies them.

## COUNT VI – DECLARATORY JUDGMENT OF OWNERSHIP OF PATENTS

68.     ConMed incorporates paragraphs 1-67 of this Answer as if fully set forth herein.

69.     ConMed denies the allegations of paragraph 69 of the Complaint.

70.     ConMed admits that paragraph 11 of the 1993 Agreement provides in part as stated in paragraph 70 of the Complaint.

71.     Upon information and belief, ConMed denies the allegations of paragraph 71 of the Complaint.

72.     Upon information and belief, ConMed denies the allegations of paragraph 72 of the Complaint.

## COUNT VII – DECLARATION OF RIGHT, TITLE AND INTEREST IN THE JULY 2005 AGREEMENT

73.     ConMed incorporates paragraphs 1-72 of this Answer as if fully set forth herein.

74.     ConMed denies the allegations of paragraph 74 of the Complaint.

75.     ConMed admits the allegations of paragraph 75 of the Complaint.

76.     Upon information and belief, ConMed denies the allegations of paragraph 76 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Invalidity)

77.     The claims of the patents in suit are invalid, void and/or unenforceable for failure to comply with all the statutory prerequisites of Title 35 of the United States Code including, but not limited to, §§ 101, 102, 103, 111, 112, 116, 132, 135, 256 and 287.

### SECOND AFFIRMATIVE DEFENSE
### (Noninfringement)

78.     ConMed has not infringed any valid and enforceable claim of the patents in suit. Moreover, the claims of the patents in suit are so limited by the respective patent specifications, prosecution history, and/or prior art that USEG is estopped or otherwise precluded from maintaining that the claims are of sufficient scope as to be infringed by the accused device and its manner of operation, either literally or by equivalents.

### THIRD AFFIRMATIVE DEFENSE
### (Inequitable Conduct and Unclean Hands)

79.     The patents in suit are unenforceable by reason of USEG's inequitable conduct in prosecuting the patents before the United States Patent and Trademark Office, and by reason of USEG's unclean hands in attempting to enforce the patents in bad faith, knowing that these patents are invalid, unenforceable, and/or not infringed by ConMed.

80.     Dr. Naomi L. Nakao is an Associate Professor of Medicine at Beth Israel Medical Center and the Albert Einstein School of Medicine.  She is also a Board Certified

Gastroenterologist practicing in New York City.  Dr. Nakao is the inventor of the Nakao Spider-Net Retrieval Device.

81.     In 1989, Dr. Nakao and her colleague, Dr. Peter Wilk, founded Wilk & Nakao Medical Technology, Inc. ("W&N"), a company devoted to creating and developing new endoscopic surgical devices and procedures.  Over the years, Dr. Nakao and Dr. Wilk made many inventions in the field of endoscopic devices for cutting and removing tissue.

82.     On December 13, 1993, W&N entered into an Agreement with USEG. According to the Agreement, USEG was to manufacture a prototype of the Nakao Snare according to Dr. Nakao's specifications.  The Nakao Snare had a cauterization snare loop with an attached retrieval net for both cutting and retrieving a tissue specimen.

83.     On or before January 18, 1994, Dr. Nakao identified to Dean Secrest of USEG a problem with the USEG prototypes.  The retrieval net was fixed to the snare loop in such a way that the net material did not slide freely on the loop.  As a result, when a delicate polypoid specimen was captured in the net and the loop retracted back into its sheath, the specimen might be damaged, thereby preventing an exact pathological examination of the specimen.  If the net were left free to slide on the loop, it would gently cradle the specimen by bunching up at the distal end of the loop as the loop was retracted back into the sheath.  However, if repositioning of the net were necessary, it could not be accomplished, as the free net could not be brought back to the proximal end of the loop to form a pocket around the entire periphery of the loop.  As a solution to this vexing design problem, Dr. Nakao described to Mr. Secrest a retrieval net having a small tether with one end attached to the proximal portion of the net and another end connected to the sheath wall at a point near the distal end of the sheath ("the distal tether").  Mr. Secrest told Dr. Nakao that he would try to build a prototype embodying this concept.

11

84.    By February 15, 1994, USEG had not yet built a satisfactory working prototype of the Nakao Snare.  On that date, W&N and USEG executed a letter agreement in which it was confirmed that the time period for completion of the prototype was extended to March 31, 1994.

85.    In a letter dated February 24, 1994, Dr. Nakao again described to Secrest and Younker of USEG the repositioning problem and her solution, the distal tether.  In addition, Dr. Nakao explained that the tether threads "are connected to the inside of the sheath at a distance from the sheath's distal end equal to half the length of the snare [loop]."

86.    On March 14, 1994, W&N filed U.S. Application Serial Number 08/213,196, which ultimately issued as U.S. Patent 5,486,182 ("the '182 Patent").  In this application, Dr. Nakao disclosed the distal tether invention in FIGS. 29A, 29B and 29C as well as in column 15, lines 3-12.

87.    By March 29, 1994, it was apparent that USEG would again miss the deadline for delivering a satisfactory working prototype of the Nakao Snare.  Dr. Nakao granted another extension.  USEG missed this extended deadline as well.  After that, Dr. Nakao tired of granting extensions.

88.    On or before June 21, 1994, Dr. Nakao invented a friction-fit anchor for the distal tether.  She described this invention to an employee of USEG in a telephone conference on June 21, 1994.

89.    On November 2, 1994, W&N filed U.S. Application Serial Number 08/333,363, which ultimately issued as U.S. Patent 5,759,187 ("the '187 Patent").  This application also contained a disclosure of Dr. Nakao's distal tether invention, as well as claims directed to that invention.

90.    The Nakao Snare I, an interim device, was presented to attendees of the annual Digestive Disease Week conference on or about May 14, 1995.

91.    On May 14, 1996, USEG filed U.S. Application Serial Number 08/649,893 ("the '893 Application"), which ultimately issued as the '621 Patent.  The application described and claimed endoscopic retrieval devices having Dr. Nakao's distal tether and friction-fit anchor.  In a declaration filed with the patent application, Secrest and Younker, on behalf of USEG, knowingly and with fraudulent intent claimed to be "the original, first and joint inventors" of the subject matter claimed in the patent application, when they should have named Dr. Nakao as co-inventor.  The application purports to have been assigned to USEG on May 13, 1996.

92.    Mr. Secrest and Mr. Younker were aware that Dr. Nakao had invented subject matter described and claimed in the '893 Application.  Information concerning proper inventorship constitutes highly material information that USEG, Secrest and Younker should have disclosed to the U.S. Patent Office at the time of filing and throughout prosecution of the '893 Application.

93.    In prosecution of the '893 Application, the Examiner rejected certain claims as anticipated under 35 U.S.C. 102(e) by W&N's '182 Patent.  The rejected claims were directed to endoscopic surgical devices for retrieving severed tissue comprising, among other elements, Dr. Nakao's distal tether and friction-fit anchor.

94.    In a response dated July 23, 1998, Secrest and Younker invoked the provisions of 37 CFR § 1.131 and submitted a declaration of Dean J. Secrest (the "Secrest Declaration") for the purpose of showing that Secrest and Younker had invented the subject matter of the rejected claims prior to March 14, 1994, the filing date of the application that issued as Nakao's '182 Patent.  The representations made in the Secrest Declaration were false, made with knowledge of

their falsity, and made with the intent to induce the Examiner to allow the claims and issue a patent to USEG.

95.     In a Final Office Action dated October 13, 1998, the Patent Office found the Secrest Declaration "ineffective to overcome the NAKAO reference" on the grounds that the Declaration contained "no evidence that the invention was conceived and/or reduced to practice in this country."

96.     On December 29, 1998, Secrest and Younker submitted a Request for Reconsideration and a substitute declaration by Dean J. Secrest (the "Substitute Declaration"). In the Substitute Declaration, Mr. Secrest alleges that he is a co-inventor of the invention disclosed and claimed in the '893 Application, and further alleges that the invention was conceived in the United States of America prior to March 14, 1994, the effective date of Nakao's '182 Patent.  As evidence of the conception, Mr. Secrest attached a concept drawing allegedly made by him and allegedly dated prior to March 14, 1994.  In fact, the distal tether and friction-fit anchor concepts shown in Mr. Secrest's drawing were invented by Dr. Nakao.

97.     In the Substitute Declaration, Mr. Secrest also alleges that a working prototype model of the distally anchored tether "was bench tested and successfully operated in the United States of America prior to March 14, 1994 …."  Dr. Nakao's  collaboration with USEG on devices of this nature commenced at least as early as December 13, 1993.  Mr. Secrest did not show Dr. Nakao a satisfactory working prototype model of the distal tether until well after March 14, 1994.

98.     USEG failed to tell the Patent Office that Dr. Nakao invented the devices claimed in claims 1, 2, 4 and 5 of the '621 Patent.  Upon information and belief, USEG, Secrest and

14

Younker withheld this information with the intention and effect of fraudulently inducing the Patent Office to issue a patent to them, without including Dr. Nakao.

99.     USEG and W&N continued their relationship under the December 1993 Agreement (and a 1996 Amendment) until November 25, 2003, when USEG terminated the Agreement and ceased manufacturing the Nakao Snare I.

100.    As a result of USEG's intentional and fraudulent failure to name Dr. Nakao as an inventor on the '621 patent, the '621 patent is void and unenforceable.

### FOURTH AFFIRMATIVE DEFENSE
### (Estoppel)

101.    USEG is barred by estoppel, acquiescence, and/or waiver for the reasons that follow.

102.    In June of 2001, USEG threatened to enforce the '621 patent against the Medi-Globe Corporation ("Medi-Globe"), a potential licensee and distributor of other Nakao snare devices, each of which contained a retrieval net similar, if not identical, to the Nakao Spider-Net Retrieval Device.  After communications between USEG, Medi-Globe and W&N (the predecessor of GMI), USEG expressly represented that "it will make no attempts to assert Patent No. 5,906,621 against Wilk & Nakao or Medi-Globe for manufacturing or marketing of the Nakao II or Nakao III snare which is defined as a diathermic cut and capture snare."  As the retrieval net was a component of the Nakao II and Nakao III snare devices, USEG's express representation applies equally to the Nakao Spider-Net Retrieval Device.  Furthermore, ConMed, as GMI's exclusive licensee for the Nakao Spider-Net Retrieval Device, is a third party beneficiary of the express representation set forth above.  Accordingly, USEG is estopped to assert the '621 Patent against GMI or ConMed.

## COUNTERCLAIMS

For its Counterclaims against USEG, ConMed states as follows:

### PARTIES

103.    Counterclaim Plaintiff ConMed Endoscopic Technologies, Inc. is a corporation existing under the laws of the Commonwealth of Massachusetts, with a principal place of business at 129 Concord Road, Building 3, Billerica, Massachusetts 01821-4600.

104.    Counterclaim Plaintiff ConMed Corporation is a corporation existing under the laws of the State of New York, with a principal place of business at 525 French Road, Utica, New York 13502.

105.    Upon information and belief, Counterclaim Defendant United States Endoscopy Group, Inc. ("USEG") is a corporation existing under the laws of the State of Ohio, with a principal place of business at 5976 Heisley Road, Mentor, Ohio 44060.

### JURISDICTION AND VENUE

106.    This Court has subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202; and 15 U.S.C. § 15 (Clayton Act, §4).

107.    USEG is subject to personal jurisdiction in the State of Ohio.

108.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400.

### FIRST COUNTERCLAIM
### (Declaratory Judgment of Invalidity)

109.    Paragraphs 77-108 are incorporated as if fully set forth herein.

110.    USEG alleges ownership of the '283 and '621 Patents and has brought suit against ConMed for infringement of said patents.

111.    By virtue of USEG's Complaint and ConMed's Answer in this action, an actual and justiciable case and controversy has arisen and now exists between the parties concerning the

16

validity and enforceability of the '283 and '621 Patents, as well as ConMed's alleged infringement of the patents.

112.    The '283 and '621 Patents are invalid for failing to meet one or more of the statutory prerequisites of Title 35 of the United States Code including, but not limited to, §§ 101, 102, 103, 111, 112, 116, 132, 135, 256 and 287.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Unenforceability)

113.    Paragraphs 77-112 are incorporated as if fully set forth herein.

114.    The '283 and '621 Patents are unenforceable due to USEG's unclean hands, inequitable conduct, and estoppel.

## THIRD COUNTERCLAIM
### (Declaratory Judgment of Noninfringement)

115.    Paragraphs 77-114 are incorporated as if fully set forth herein.

116.    ConMed has not directly infringed and is not directly infringing the '283 and '621 Patents, either literally or by equivalents.

117.    ConMed has not induced or contributed to infringement of the '283 and '621 Patents by others.

## FOURTH COUNTERCLAIM
### (Antitrust Violations)

118.    Paragraphs 77-117 are incorporated as if fully set forth herein.

119.    USEG markets "through the scope" ("TTS") object movement devices that employ a capture net capable of being located in any part of the human or animal body that is accessible with a scope (predominantly within the gastrointestinal tract or bronchial tubes) (hereinafter "TTS Net Devices").  TTS Net Devices may be used to capture and move or retrieve biological tissue samples or foreign objects.  The Roth Net is an example of a TTS Net Device.

ConMed's Nakao Spider-Net is another example of a TTS Net Device.  ConMed is aware of no other TTS Net Devices on the market today.

120.     There are a number of other TTS devices that do not employ a capture net, yet may be used to move or retrieve biological tissue samples or foreign objects ("TTS Non-Net Devices").  Such devices include, for example, snares, retrieval baskets, pronged graspers, and grasping (biopsy) forceps.  For certain medical indications, TTS Net Devices are superior to TTS Non-Net Devices and have become the physician's instrument of choice.  Examples of medical indications calling for a TTS Net Device include but are not limited to the retrieval of smooth round objects, disk batteries and other objects requiring encapsulation for safe retrieval, and instances in which the physician needs to remove more than one object.  Another example of a medical indication calling for a TTS Net Device is the retrieval of large polyps in a colonoscopy procedure.  Here it is important that the physician retrieve the polyp specimen intact so that the specimen may undergo a pathological examination.  The use of a TTS Net Device minimizes the risk that the polyp will be minced, crushed, or lost when the physician attempts to capture the polyp and retrieve it from the colon.  A TTS Net Device is also preferred for the retrieval of multiple polyp fragments during piecemeal polypectomy.  For these and other medical indications, TTS Net Devices stand alone and TTS Non-Net Devices are not reasonably interchangeable.  For these and other reasons, there is no significant cross elasticity of demand between TTS Net Devices and TTS Non-Net Devices.

121.     From the introduction of the Roth Net in 1993 until ConMed's introduction of the Spider-Net earlier this year, USEG's market share of TTS Net Devices was 100%.  The Nakao Spider-Net has captured a portion of the market for TTS Net Devices since its launch in May of

this year.  Accordingly, since May of this year, USEG and ConMed have been competitors in the market for TTS Net Devices ("the relevant market").

123. USEG now has, and at all relevant times has had, a predominant share of the TTS Net Device market, as well as monopoly power over that market.

123. USEG obtained the '621 patent on May 25, 1999 through fraudulent misrepresentations to the Patent Office and is now asserting the '621 Patent against ConMed with the knowledge that the '621 Patent was obtained from the Patent Office by fraud.  USEG is asserting this fraudulently-obtained patent against ConMed in order to continue to dominate the market by eliminating ConMed as a competitor and otherwise restraining trade in the relevant market.  This activity constitutes an improper maintenance or expansion of USEG's monopoly power in the relevant market, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

124. In addition, certain members of USEG's sales force have engaged in deceptive acts in order to gain sensitive pricing information concerning the Nakao Spider-Net, have disparaged the Spider-Net, and have spread false and misleading information about the Spider-Net and this law suit.

125. The assertion by USEG of the '621 Patent and the foregoing deceptive and disparaging trade practices have diminished the ability of ConMed to compete in the relevant market and have harmed and injured overall competition in the relevant market.  The public has been harmed by USEG's wrongful conduct.

126. All of these actions have been carried out by USEG for the purpose and with the effect of obtaining and maintaining monopoly power in the relevant market and to unfairly and

unlawfully exclude competition from the relevant TTS Net Device market in violation of the Sherman Act, 15 U.S.C. § 2.

## PRAYER FOR RELIEF

WHEREFORE, Defendants ConMed Endoscopic Technologies, Inc. and ConMed Corporation request that judgment be entered against Plaintiff United States Endoscopy Group, Inc.:

dismissing the Complaint with prejudice and denying each prayer for relief that Plaintiff has made;

declaring United States Patent No. 5,643,283 and United States Patent No. 5,906,621, and all claims thereof, are invalid, void and/or unenforceable;

declaring that ConMed Endoscopic Technologies, Inc. and ConMed Corporation do not infringe United States Patent No. 5,643,283 and/or United States Patent No. 5,906,621 either literally or by equivalents;

declaring that Plaintiff is estopped from asserting United States Patent No. 5,906,621 against ConMed Endoscopic Technologies, Inc. and ConMed Corporation;

awarding ConMed Endoscopic Technologies, Inc. and ConMed Corporation damages in an amount to be determined for Plaintiff-Counterclaim Defendant's violation of § 2 of the Sherman Act;

declaring this case exceptional and awarding ConMed Endoscopic Technologies, Inc. and ConMed Corporation their reasonable attorneys' fees and costs under 35 U.S.C. § 285; and

awarding ConMed Endoscopic Technologies, Inc. and ConMed Corporation such other and further relief as this Court deems just and proper.

20

## DEMAND FOR JURY TRIAL

Defendants-Counterclaim Plaintiffs ConMed Endoscopic Technologies, Inc. and ConMed Corporation hereby demand a jury trial on all issues properly triable by jury in this case.

Dated:
October 6, 2006

Respectfully submitted,

/s/ James H. Shalek

James H. Shalek, *admitted pro hac vice*
Kristin H. Neuman, *admitted pro hac vice*
Elias L. Schilowitz, *admitted pro hac vice*

PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
Phone: (212) 969-3000
Fax: (212) 969-2900

Of Counsel:

Pete C. Elliott
Bryan Schwartz
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
Phone: (216) 363-4684
Fax: (216) 363-4588

Attorneys for Defendants-Counterclaim
Plaintiffs ConMed Endoscopic Technologies,
Inc. and ConMed Corporation

Daniel S. Jonas
Jessie M. Verna
ConMed Corporation
525 French Road
Utica, NY  13502

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 6th day of October, 2006, a copy of the foregoing ConMed's

Answer to Second Amended Complaint for Patent Infringement, Breach of Contract,

Conversion, Accounting and Declaratory Judgment, and Counterclaims was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/ James H. Shalek

Attorney for Defendants ConMed Endoscopic
Technologies, Inc. and ConMed Corporation